**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| DARREN L. REAGAN,               ) | |
|         Plaintiff,              ) | |
|                                 ) | |
| v.                              ) | Civil Action No. 3:11-CV-00004-M-BF |
|                                 ) | |
| P. KAY PETERSON, Special Agent, ) | |
| FEDERAL BUREAU OF               ) | |
| INVESTIGATION, ALAN HAMPTON,    ) | |
| Special Agent, Internal Revenue Service - ) | |
| Criminal Investigation, and OTHER ) | |
| UNKNOWN NAMED AGENTS OF THE ) | |
| FBI,                            ) | |
|         Defendants.             ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Under the authority of 28 U.S.C. §636(b), the District Court referred this case to the United States Magistrate Judge for pretrial management. Before the Court for consideration is Defendants' "Motion to Dismiss Pursuant to Federal Rule 12(b)(6) For Failure to State a Claim" ("Motion," doc. 30), filed August 12, 2011. Plaintiff did not file a response to the Motion.

**Background**

Plaintiff filed this action January 3, 2011, proceeding *pro se*. He claims the Court has jurisdiction under 5 U.S.C. § 2701, *et seq.* (Administrative Procedures Act), 28 U.S.C. §§ 1331, 1346(b), 1355-57, 1361, 2201, and 2202. Plaintiff also claims the Court has jurisdiction under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Fourth and Fifth Amendments of the United States Constitution for violation of his civil rights by

federal agents. Plaintiff names Special Agents P. Kaye[1] Peterson ("Peterson") and Alan Hampton ("Hampton"), and sues "Other Unknown Named Agents of the FBI." Plaintiff sues the agents in their individual and official capacities. He seeks a determination that his civil, statutory, and constitutional rights were violated by Defendants' taking, converting, and transferring his ownership in his 2002 Lexus and his 2006 Lexus (the "Lexus cars") to Tolleson Private Bank, N.A. ("Tolleson"). He seeks return of the Lexus cars, compensatory damages, costs, and such other relief to which he may be entitled.

## Plaintiff's Allegations

Plaintiff excerpted some of his allegations from the affidavit of Defendant Hampton in support of the seizure warrants which this Court issued on August 27, 2007[2] and followed with additional allegations. The Court has summarized Plaintiff's allegations, beginning with those he took from Hampton's affidavit.

The IRS-CI and FBI had been investigating Plaintiff and other individuals since 2004; the criminal activity supporting the seizure and forfeiture of the property described in the application for seizure occurred on or after March 2005.

Plaintiff was the CEO of the Black State Employees Association of Texas ("BSEAT"). BSEAT purchased real property at 2311 West Ledbetter, Dallas, Texas ("the Ledbetter property")

---

[1] In Plaintiff's complaint, he sued "P. Kaye Peterson" and others. In their Motion to Dismiss, Defendants refer to Special Agent Peterson as "Kay Peterson." Therefore, this Court adopts Defendants' spelling of Agent Peterson's first name as "Kay."

[2] The seizure warrants ordered the seizure of seven vehicles, including the 2002 Lexus and the 2006 Lexus. Seizure Warrant 3:07-MJ-376 included Plaintiff's 2002 Lexus SC430, VIN JTHFN48Y520031422 and Seizure Warrant 3:07-MJ-381 included the 2006 Lexus, VIN JYHBN96S565000688.

in January 1997 and sold it to West Cliff Shopping Plaza I Limited Partnership ("WCLP") in November 1999. Plaintiff was also the president of WCLP and was listed as its registered agent. Plaintiff signed the certificate as president of WCLP's general partner: West Cliff Shopping Plaza, Inc. ("WCI").

In November 1999, The Retail Initiative 1994 Limited Partnership ("TRI") of Delaware became a limited partner in the WCLP, and a partnership agreement was created to develop and operate a shopping plaza at the Ledbetter property. Pursuant to the partnership agreement, BSEAT contributed the Ledbetter property, TRI was to provide $1,000,000.00 in investment funds, and WCI was to provide some level of investment funds.

Plaintiff, as president of WCI and on behalf of WCLP, sold the Ledbetter property on March 23, 2005, to a consortium of buyers ("Buyers") for $7,100,000.00. After loan payoffs, closing costs, and other fees, a total of $2,258,127.54 was wired to WCI on March 24, 2005. Plaintiff signed the warranty deed conveying the Ledbetter property to the Buyers, which was filed on March 24, 2005, with the Dallas County Clerk. One of Plaintiff's partners, TRI, was not pleased with the sale and thus a partnership dispute commenced.

A review of WCI's bank records revealed that the proceeds of the sale, $2,258,127.54, were transferred by wire to Wells Fargo Bank, NA, account #4651 ("WF4651"), operated by Plaintiff as Chairman/CEO and Gail Terrell ("Terrell") as Secretary of WCI. Among other relevant transactions, the following withdrawals from WF4651 involving the Lexus cars occurred after receipt of the sale proceeds:

> On March 24, 2005, a $354,167.02 wire transfer was made from WF4651 to Tolleson and was used to pay off loans held in Plaintiff's name, including $14,274.75 on loan #12518 for the purchase of the 2002 Lexus SC430, VIN JTHFN48Y520031422; and,

3

On March 25, 2005, a $25,150.66 cash withdrawal was made from WF4651 on withdrawal ticket #0218 signed by Plaintiff, and the cash was used to purchase a cashier's check, #0679403980, in the amount of $25,150.66, payable to Tolleson. Hampton believed that the check was used as partial payment on the purchase of the 2006 Lexus, VIN JYHBN96S565000688.  The bank records included a retail purchase order dated 3/25/2005 from North Park Lexus, 611 Lockhill Selma, San Antonio, Texas 78216, and the order listed the 2006 Lexus with a delivered price of $65,150.66.

Based on his training, experience, and the information described, Hampton believed the property described, including the Lexus cars, were involved in, or traceable to, property involved in violations of 18 U.S.C. § 1956 and/or § 1957.  Seven vehicles, including the Lexus cars, were seized on August 29, 2007.

Plaintiff's remaining allegations are summarized as follows:

On November 5, 2007, Plaintiff and the other owners of the vehicles filed a "Seized Asset Claim Form" with the FBI. Plaintiff's counsel, Vincent W. Perini, also filed a request for the release of Plaintiff's vehicles. On November 19, 2007, Todd M. Blessing, Associate Division Counsel for the FBI, responded by certified mail stating that Plaintiff's request to the FBI for the release of the above-described property had been reviewed and was denied. (Ex. B to Pl.'s Compl.)

The FBI referred the Seized Asset Claim Forms to the U.S. Attorney's Office, Northern District of Texas, Dallas Division, for consideration. Thereafter, proceeding *pro se*, Plaintiff filed several requests for the return of his vehicles because he believed they were wrongfully seized; but he received no replies.

On February 5, 2008, the U.S. Attorney's Office, through Assistant U.S. Attorney John J. De La Garza III ("AUSA Garza"), filed a Complaint for Forfeiture (Case No. 3:08-CV-194-M) in the U.S. District Court for the Northern District of Texas, Dallas Division, on one of the seven vehicles that were seized, but the Complaint did not seek forfeiture of the Lexus cars.  According

4

to Plaintiff, he "stepped up his demand to have his vehicles returned." (Pl.'s Compl. at 7.) As a result, the FBI released four of the six remaining unforfeited vehicles, but kept the Lexus cars without explanation.

On October 2, 2008, Plaintiff filed a letter/motion in the Mercedes forfeiture action (3:08-CV-194-M), asking for information about his "vehicles that have not been released/returned to the registered interested owners and are still being held without any civil forfeiture action taken by the govt.," specifically the Lexus cars. In another letter/motion dated October 2, 2008, Plaintiff referenced his letters of request for the release of the Lexus cars "which were seized by the govt. over a year ago."

A year later, on September 21, 2009, Plaintiff filed another letter/motion for return of property stating that the government "is time barred from taking any civil forfeiture actions because over two years have expired without [] filing a formal complaint for forfeiture." On September 30, 2009, in the Mercedes forfeiture action, Plaintiff learned for the first time that the Lexus cars had been released to Tolleson, the lienholder, in February 2008. Plaintiff filed a Tort Claim with the FBI and IRS on November 10, 2010, claiming, "Defendants tortiously took [his] properties and converted them to Tolleson's on September 30, 2009, the date that Defendants revealed the earlier (Feb. 2008) return of the vehicles to Tolleson."

## **Standard of Review**

In determining whether dismissal should be granted under Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). To defeat the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citation and footnote omitted).  However, legal conclusions need not be accepted as true.   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).   Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so."  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

## Analysis

### Defendants' Contention that *Bivens* Is Not Applicable to Plaintiff's Claims

Defendants contend that " the Civil Assets Forfeiture Reform Act's ("CAFRA's"), 18 U.S.C. § 983, *et seq*., comprehensive statutory scheme precludes the Court from inferring a *Bivens* cause of action involving seizure and forfeiture decisions."  Defendants assert that Plaintiff's Complaint is little more than "an inappropriate collateral attack on the administrative forfeiture proceedings," and "because Reagan's rights were protected in the remedy provided in CAFRA, his *Bivens* cause of action involving seizure and forfeiture decisions should be dismissed."

Defendants correctly state that the terms of 18 U.S.C. § (e)(5) provide that a motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.  According to Plaintiff's allegations, no declaration of forfeiture of the Lexus cars under a civil forfeiture statute has been made.  Plaintiff alleges that the FBI seized the Lexus cars pursuant to a seizure warrant but did not return the cars to him and did not file either

6

a civil or a criminal forfeiture action against the cars. Plaintiff claims he learned for the first time on September 30, 2009 (during the Mercedes forfeiture action, Case No. 3:08-CV-194-M) that the FBI had released the Lexus cars to Tolleson, the lienholder, in February 2008.

In *Pena v. United States*, a *pro se* party filed a motion for return of seized property pursuant to Rule 41(e). *Pena*, 157 F.3d 984, 987 (5th Cir. 1998). The motion could not be granted because the property had been destroyed. The Fifth Circuit held that this situation presented the facts necessary for an action under *Bivens*, and Plaintiff should have been allowed to amend his Complaint to allege a *Bivens* action. *Id.*

The Court finds that Defendants have not shown that, based upon the facts alleged in the Complaint, a *Bivens* action is entirely precluded against the as-yet-unnamed agents. The District Court should deny Defendants' claim that based upon CAFRA, "all of Reagan's *Bivens* claims [] be dismissed in their entirety for failure to state a claim."

### **Qualified Immunity**

Defendants Peterson and Hampton seek dismissal of the claims against them on the basis of qualified immunity. The doctrine of qualified immunity shields state officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, the court conducts a familiar two-step inquiry: First the court determines whether the plaintiff's allegations allege facts to establish that the official violated the plaintiff's constitutional rights. *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). Whether the facts establish

a violation of a constitutional right is determined with reference to current law. *See Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005); *McClendon,* 305 F.3d at 323. Second, the court must decide if the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See McClendon,* 305 F.3d at 323. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009), receding from *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001). To overcome qualified immunity at the pleading stage, a plaintiff's complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff alleges that Peterson, Hampton, and other unnamed FBI agents investigated Reagan for conduct which led to his arrest and conviction. During their investigation, they swore out affidavits that were used in the seizure of Reagan's vehicles. Based upon the agents' sworn testimony, this Court found probable cause for seizure warrants to be issued for seven vehicles.

Plaintiff alleges that he was unconstitutionally deprived of ownership and use of the Lexus cars when he was not afforded due process or compensation and when he did not receive notice and opportunity to challenge the release of his property to a third party. (Compl. at 9.) Defendants point out that Plaintiff fails to state a plausible violation of a constitutional right by Peterson or Hampton.

Ordinarily, qualified immunity is irrelevant to the existence of Plaintiff's cause of action because it is a defense available to the official in question. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "Since qualified immunity is a defense, the burden of pleading it rests with the defendant." *Id*. The official must claim that his conduct was justified by an objectively reasonable belief that

8

it was lawful. *Id*. A plaintiff has no obligation to anticipate a qualified immunity defense by stating that the defendant acted in bad faith. *Id*. However, in this case, the Court can consider the qualified immunity defense raised in the Motion to Dismiss because Plaintiff has not pled any facts to show that Peterson or Hampton personally participated in any alleged constitutional violation. Peterson and Hampton submitted affidavits in support of the issuance of seizure warrants by a United States Magistrate Judge. The magistrate judge's determination of probable cause breaks the chain of causation and insulates the initiating party from liability. *See Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977). Defendants seized the seven vehicles based upon seizure warrants issued by a United States Magistrate Judge after finding probable cause for the warrants to issue.

The Mercedes was forfeited after a trial; four other vehicles were returned; and an unnamed agent or agents turned over the Lexus cars to Tolleson, the lienholder. Plaintiff's factual allegations against Peterson and Hampton, taken as true, do not state the violation of a clearly established constitutional right. Moreover, they do not state a claim for relief under the Fourth or Fifth Amendments that is plausible on its face. Accordingly, the District Court should dismiss Plaintiff's claims against Peterson and Hampton based upon qualified immunity.

### The Court's General Equity Jurisdiction under 18 U.S.C. § 1331

Plaintiff's request for return of property seized from him may be characterized as a Rule 41(g) motion for return of property under FED. R. CRIM. P. 41(g). Because the criminal case against Plaintiff has concluded, the Court will construe the motion as a civil complaint under the Court's general equity jurisdiction under 18 U.S.C. § 1331. A finding of whether the government retained the Lexus cars and what happened to them is a necessary predicate to deciding a motion for the

return of property.  *See Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007) (citing *Mora v. United States*, 955 F.2d 156, 159 (2nd Cir. 1992)).

The Court must determine whether Plaintiff was unconstitutionally deprived of ownership and use of his property by the unnamed agents and "was not afforded due process . . . from deprivation of his property" or "notice and the opportunity to challenge the release of his property to a third party." (Compl. at 9.)

Defendants have offered to supplement the record. (Mot. to Dismiss at 12 n.5.) The Court finds that the District Court should order Defendants to supplement the record and make initial disclosures to Plaintiff and to the Court showing the names of any agents involved in what happened to the Lexus cars after the seizure, what each agent did, who caused the Lexus cars to be turned over to Tolleson, the documentation of the liens held by Tolleson (including the specific amounts owing on each Lexus at the time of the turnover), and the statutory or legal basis for turning over the Lexus cars to Tolleson rather than giving Plaintiff notice and the opportunity to object to their release to Tolleson.

### **Leave to Amend**

The Fifth Circuit disfavors dismissal for failure to state a claim of a *pro se* complaint where the plaintiff does not have an opportunity to amend. *Pena*, 157 F.3d at 987 n.3. Plaintiff, who is proceeding *pro se*, should be given the opportunity to amend his pleadings after supplementation of the record by Defendants.

**Recommendation**

The Court recommends that Defendants' Motion to Dismiss all *Bivens* claims and potential *Bivens* claims as precluded by CAFRA be denied. The Court further recommends that the District Court exercise general equity jurisdiction under 18 U.S.C. § 1331 based on Plaintiff's motion for return of property. Additionally, the Court recommends that Plaintiff's claims for unconstitutional seizure of the Lexus cars against Peterson and Hampton be dismissed with prejudice based upon qualified immunity. The Court also recommends that the District Court order the government, within twenty days, to supplement the record by making the disclosures detailed in these findings. Finally, the District Court should allow Plaintiff thirty days after the record is supplemented to file an Amended Complaint.

SO RECOMMENDED this 15th day of November, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).