IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DARREN L. REAGAN,           )
           Plaintiff,     )
                      )
v.                       )     Civ. No. 3:11-CV-0004-M-BF
                      )
UNITED STATES OF AMERICA,     )
JOHN DE LA GARZA, AUSA,       )
WILBUR M. GREGORY, JR., SSA,  )
Federal Bureau of Investigation, and  )
ALAN HAMPTON,  SA, Internal Revenue Service.
           Defendants.     )

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Under the authority of 28 U.S.C. §636(b), the District Court referred this case to the United

States Magistrate Judge for pretrial management.  Before the Court for consideration is Defendants'

"Motion to Dismiss Pursuant to Federal Rule 12(b)(1) and 12(b)(6)" ("Motion," doc. 55), filed April

26, 2012.  Plaintiff filed a Response ("Response," doc. 56) on May 17, 2012, and Defendants filed

a Reply ("Reply," doc. 57) on June 1, 2012.

The Court has considered the Motion, Response, and Reply, together with the record, and

recommends that Defendants' Motion be granted.

**Background and Procedural History**

This suit arises out of the government's seizure of a 2002 Lexus SC430 (VIN

JTHFN48Y520031422 (the "2002 Lexus") and a 2006 Lexus G430 (VIN JYHBN96S565000688)

(the "2006 Lexus") (collectively, the "Lexus cars").  The Federal Bureau of Investigation ("FBI")

provided notice of pending forfeiture to all parties who claimed an interest in the Lexus cars and

turned the cars over to De La Garza for forfeiture proceedings.  After an investigation, De La Garza

advised the government that both of the Lexus cars had substantial liens held by Tolleson Private Bank, N.A. ("Tolleson"), and that the equity potential subject to forfeiture was insufficient to merit proceeding judicially. De La Garza utilized an administrative process known as "quick release" to release the Lexus Cars to Tolleson, the innocent lienholder.

Based on qualified immunity, the District Court previously dismissed with prejudice Plaintiff's claims against Special Agents P. Kay Peterson ("Peterson") and Alan Hampton ("Hampton") for unconstitutional seizure of the Lexus cars. The Court ordered the government to supplement the record by disclosing details regarding the Lexus cars, their seizure, and their turnover to Tolleson. The Court permitted Plaintiff to file a First Amended Complaint for Return of Property and/or For Compensatory Damages and Injunctive and Declaratory Judgment ("Am. Compl.," doc. 49).

Defendants supplemented the record with documents outside the pleadings, and Plaintiff did not object. The Court gave notice that it intended to treat the Rule 12(b)(6) Motion as a Motion for Summary Judgment pursuant to Rule 56. The Court gave all parties a reasonable opportunity to further supplement the record; however, no more supplementary material was submitted. Accordingly, pursuant to FED. R. CIV. P. 12(d), the Rule 12(b)(6) motion will be treated as one for summary judgment under Rule 56.

### Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff adopts and realleges the allegations in his original Complaint, including his claims against the dismissed agent Hampton, contending that the District Court should not have dismissed his claims against Hampton. Plaintiff adds as Defendants De La Garza and William M. Gregory, Jr. ("Gregory"), Supervisory Special Agent ("SSA") of the FBI.

2

Plaintiff claims that the acts of federal officials involved in the seizures and releases of the Lexus cars were unlawful and violated his rights. (Am. Compl., 3-4, 7-8.) He claims he is entitled to money damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* because Defendants deprived him of the Lexus cars in violation of his Fourth and Fifth Amendment rights. *Bivens*, 403 U.S. 388 (1971). (Am. Compl., 7-8.) Plaintiff alleges that he is the owner of the Lexus cars because he had made payments on the cars and had equity in them. Plaintiff alleges that Defendants (1) violated his constitutional rights to be free from illegal seizure, (2) violated his constitutional rights to own and use property, (3) violated his constitutional and statutory rights to notice and opportunity to defend against the taking, conversion, and transfer of his property from his ownership to that of Tolleson, and (4) violated his constitutional right to due process and just compensation for deprivation of property. (Am. Compl., p. 7-8.)

## Undisputed Material Facts[1]

The Lexus cars were seized by FBI and Internal Revenue Service ("IRS") personnel on August 29, 2007, pursuant to a warrant authorized by United States Magistrate Judge Paul D. Stickney. On the date the vehicles were seized, Plaintiff was not the registered owner of either the 2002 Lexus or the 2006 Lexus. (Gregory Aff., doc. 48-1 at 1.)

The 2002 Lexus was seized from the residence of Debra Kirvin ("Kirvin"), (Plaintiff's estranged wife), 1609 Masters Drive, Desoto, TX 75115. (*Id.*) According to records from the Texas Department of Motor Vehicles ("DMV") dated August 8, 2007, the registered owners of the 2002 Lexus were Kirvin and Tolleson, 5550 Preston Road, Suite B, Dallas, TX 75205. (Doc. 48-1, Ex.

---

[1] Plaintiff has not supported his unsworn response to the Motion with any affidavits nor submitted any evidence in support of his conclusory allegations. The undisputed material facts are derived from competent summary judgment evidence in Defendants' Record Supplements (doc. 48).

A.)  The last payment to Tolleson on the 2002 Lexus was made in September of 2007.  (Doc.  48-1,

Ex. L.)  Tolleson sued Plaintiff and Kirvin, and obtained judgment against them on September 10,

2007.  (Doc. 48-2 at 21.)

The 2006 Lexus was seized from Plaintiff at his residence, 1108 Angie Lane, DeSoto, TX

75115.  (Gregory Aff., doc. 48-1 at 2.)  DMV records dated February 5, 2007, list the registered

owner as Tolleson, and also note that Tolleson's ownership of the 2006 Lexus was pursuant to a

Security Lien Agreement because the car had been repossessed from Plaintiff.  (Doc. 48-1, Ex. B.)

Tolleson notified Plaintiff on March 16, 2007, well before the government's seizure of the 2006

Lexus, that Plaintiff was behind on the payments, and in fact, that the last payment received was on

April 24, 2007.  (Doc. 48-1, Ex. J.)  Tolleson notified Plaintiff that as part of the collection process,

title to the 2006 Lexus had been transferred to Tolleson.  (Doc. 48-1 at 88.)

After the government seized the Lexus cars, an FBI forfeiture paralegal coordinated the

transportation of the vehicles with a forfeiture specialist from the United States Marshals Service

("USMS").  (Gregory Aff., doc. 48-1 at 3.)  The USMS has a contract with Pro-Tow Wrecker, who

towed the Lexus cars to a USMS storage facility in Fort Worth.[2]  (*Id.*) Once the vehicles were turned

over to the USMS, they remained in the storage facility until De La Garza released them to Tolleson

in late January and early February, 2008, under his administrative authority to release assets to

innocent lienholders.  (*Id.*)

---

[2] According to FBI policy, vehicles seized under the administrative or judicial forfeiture process are
to be turned over to the custody of the USMS, who stores and maintains the asset during
proceedings.

After the vehicles were seized, the FBI sent written notices, return receipt requested, to all parties who appeared to have an interest in the Lexus cars. (Gregory Aff., doc. 48-1 at 4.) On October 3, 2007, three separate notices were sent by certified mail, return receipt requested, to Plaintiff.[3] The notices explained the right to file a claim of ownership to contest the forfeitures (doc. 48-1 at 22, Ex. D). Notices were also sent to Kirvin (doc. 48-1 at 20) and to Tolleson (doc. 48-1 at 18). (*Id.*) All three interested parties responded. (*Id.*) Tolleson filed a Petition for Remission contesting the potential forfeitures and advised it held liens on both of the Lexus cars. (Doc. 48-1, Ex. C, the 2002 Lexus; Ex. D, the 2006 Lexus.)

On December 19, 2007, the FBI notified De La Garza that claims had been received concerning the Lexus cars and requested that De La Garza commence judicial forfeiture actions against the vehicles. (Doc. 48-1, Ex. E.) The letter noted the enclosure of the original claim of ownership filed by Plaintiff. (*Id.*)

Plaintiff and Kirvin signed the Promissory Note on the 2002 Lexus (doc. 48-1, Ex. I). The amount owed to Tolleson pursuant to its lien on the 2002 Lexus was $16,923.59, and the last payment had been made on in September of 2007 (doc. 48-1, Ex. H). Plaintiff signed the Promissory Note on the 2006 Lexus (doc. 48-1, Ex. K). The amount owed to Tolleson pursuant to its lien on the 2006 Lexus was $26,143.21 and the last payment had been made on April 24, 2007 (doc. 48-1, Ex. J).

---

[3] One notice was sent to Plaintiff in care of his counsel Ronald D. Wells, another notice was sent to him in care of his counsel, Mark Elliston, and a third was sent to him at his home address on Angie Lane. (Doc. 48-1, Ex. D.)

On March 16, 2007, Tolleson notified Plaintiff that the loan on the 2006 Lexus was in arrears, that the note was due, and that Tolleson was exercising its possessory and ownership rights to the 2006 Lexus and would be selling it. Tolleson also told Plaintiff he had the opportunity to purchase the car. (Doc. 48-1, Ex. M.) On April 24, 2007, Tolleson gave Plaintiff a payoff figure of $27,896.70 for the promissory note on the 2006 Lexus, giving him a deadline of 4:00 P.M. that day to pay off the balance on the note. (Doc. 48-1 at 88.)

After an investigation, De La Garza declined to file judicial forfeiture actions against the Lexus cars, advising that both vehicles had substantial liens held by Tolleson Bank, and that the equity potential subject to forfeiture was insufficient to merit proceeding judicially. De La Garza recommended the Lexus cars be released to Tolleson. On January 29, 2008, and February 4, 2008, the United States Attorney's Office, Northern District of Texas, ("USAO, NDT") issued Disposal Instructions regarding the two vehicles in the Consolidated Asset Tracking System (CATS) database[4] (doc. 48-1, Exs. F and G.), and the Lexus cars were quick released to Tolleson, the innocent lienholder (doc. 48-1, Ex. F, the 2002 Lexus; Ex. G, the 2006 Lexus). Even after the cars had been turned over to Tolleson, the lienholder gave Plaintiff the opportunity to make up the back payments. On February 13, 2008, Tolleson notified Plaintiff he could regain possession by making up all back

---

[4] The Consolidated Asset Tracking System (CATS) is a Department of Justice ("DOJ") consolidated database for both administrative and judicial cases which track the activity of assets as they move through the forfeiture cycle. Email notifications and document report generating software is integrated into CATS to simplify communications between the USAO and other participating agencies.

payments before February 25, 2008.   However, Plaintiff never made up the back payments.   (Doc. 48-1. Ex. L.)

### Threshhold Issue

In his Amended Complaint, Plaintiff attempts to state a claim for relief against Hampton for unconstitutional seizure of the Lexus cars.   The government contends any claims against Hampton are barred by the "law of the case" doctrine.   Although the United States Supreme Court has described the "law of the case [a]s an amorphous concept," it has held that "[a]s most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 131 S. Ct. 1229, 1250-51, 179 L. Ed. 2d 196 (2011) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)).   The Supreme Court has explained that this doctrine "directs a court's discretion, it does not limit the tribunal's power." *Id.*   However, "absent changed circumstances or unforeseen issues not previously litigated," the general principles of finality and repose apply. *Id.* (quoting *Arizona,* 460 U.S. at 618).

The District Court previously dismissed Hampton based upon qualified immunity.   Plaintiff has failed to supplement the record with new claims or evidence of new claims against Hampton. Plaintiff's explanation that Hampton was dismissed before the government supplemented the record is meaningless.   The record did not previously contain, nor does it now contain, any competent summary judgment evidence that Hampton is not entitled to qualified immunity for his part in the seizure of the Lexus cars.   When a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case. *See United States v. Castillo*, 179

7

F.3d 321, 326 (5th Cir. 1999). The District Court's decision that Mr. Hampton is entitled to qualified immunity based upon the facts of this case should remain undisturbed. Plaintiff should not be permitted to reinstate Hampton as a defendant in this case.

## Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1)
### Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). In ruling on a motion to dismiss pursuant to Rule 12(b)(1), the court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The trial court must first determine whether the defendant has made a facial or factual attack on a plaintiff's complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A defendant makes a facial attack by merely filing a Rule 12(b)(1) motion, in which case "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* On the other hand, a defendant makes a factual attack by submitting "affidavits, testimony, or other evidentiary materials," in which case a plaintiff must "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence

that the trial court does have subject matter jurisdiction." *Id*. Here, Defendants have made a factual attack, supported by affidavits and other evidentiary materials.

### Sovereign Immunity

The government contends that because Plaintiff's constitutional claims for money damages are barred by sovereign immunity, the Court lacks subject matter jurisdiction as to Plaintiff's claims against the United States and its agents in their official capacity. "[S]overeign immunity is inherent in our constitutional structure and . . . renders the United States and its departments . . . immune from suit except as the United States has consented to be sued." *Williamson v. United States Dept. of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). When there is any doubt, waiver will not be found because waiver cannot be implied, assumed, or based upon speculation, surmise, or conjecture. *United States v. King,* 395 U.S. 1, 4 (1969). The government's sovereign immunity may not be modified by implication. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 683–85 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Moreover, any such waiver "must be 'construed strictly in favor of the sovereign.'" *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992).

9

## Analysis

The government contends that Plaintiff's constitutional claims for money damages are barred by sovereign immunity, except insofar as he can state a claim against a specific government agent in his individual capacity pursuant to *Bivens*.[5]   *See Meyer*, 510 U.S. 471 (holding that a *Bivens* action may be brought against individual federal agents but not against federal agencies). "[A] suit for damages against the United States based on the Constitution is not contemplated by *Bivens* and its progeny." *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982). A suit against a government official in his official capacity is a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

Plaintiff argues that his claim against the United States and its Officials must proceed under the Federal Tort Claims Act ("FTCA"). However, Plaintiff does not show that he has exhausted his administrative remedies under the FTCA, a prerequisite to bringing an FTCA cause of action in this Court.

The Court recommends that the District Court grant the government's Rule 12(b)(1) Motion and dismiss Plaintiff's claims against the United States, the FBI, De La Garza, and Gregory in their official capacities for lack of subject matter jurisdiction based upon sovereign immunity.

---

[5]  At the time the government filed its Motion, De La Garza and Gregory had not been served. However, they have since been served.

## Motion for Summary Judgment
## Standard of Review

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex,* 477 U.S. at 322-25).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding evidence favorable to the movant that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 152 (2000). Moreover, "the court must draw all justifiable inferences in favor of the

nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

Only if both parties have introduced evidence showing that a controversy exists, must "factual controversies [be] construed in the light most favorable to the nonmovant." *Lynch,* 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir. 1991). In the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch,* 140 F.3d at 625. Further, the nonmoving party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

### *Bivens* **Claims against De La Garza and Gregory in their Individual Capacities**[6]

In *Bivens,* the United States Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court pursuant to 28 U.S.C. § 1331, the statute that provides for federal question jurisdiction. *Bivens,* 403 U.S. at 397. "*Bivens*, of course, is the counterpart to 42 U.S.C. § 1983," and it extends to parties injured by federal actors the protections afforded under § 1983 to parties injured by state actors. *Chapman v. United States,* No. 4:06-CV-0426-Y, 2006 WL 3831227, at * 1 n. 8 (N.D. Tex. Dec. 27, 2006); *see also Izen v. Catalina,* 398 F.3d 363, 367 n. 3 (5th Cir. 2005) (per curiam). Consequently, to state a viable claim under *Bivens,* a plaintiff must show that a defendant has deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Cf. Livadas v.*

------------------------------------------------

[6] Once property is retained pursuant to civil forfeiture, instead of for use as evidence, a Rule 41(g) motion is not available. *United States v. Artis,* 2006 WL 771177, *1 (11th Cir. 2006).

*Bradshaw,* 512 U.S. 107, 132 (1994) (stating that 42 U.S.C. § 1983 provides a federal cause of action and affords redress for the "deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States").

## Analysis

Plaintiff makes entirely conclusory and unsupported claims that the government maliciously or arbitrarily and capriciously seized and turned over the Lexus cars to Tolleson because Plaintiff refused to come in for an interview concerning the Don Hill case. Plaintiff has failed to present competent summary judgment evidence to show that either De La Garza or Gregory violated any of Plaintiff's constitutional rights. With respect to a procedural due process claim, the undisputed facts show that after the legal seizure of the Lexus cars and while the cars were in FBI custody, the FBI sent three separate notices regarding each car to Plaintiff by certified mail, return receipt requested. The notices explained the right to file a claim of ownership to contest forfeiture of the vehicles (doc. 48-1, Ex. D).

To satisfy due process, notice must be reasonably calculated to inform the interested party of the contemplated forfeiture and to offer the party a fair chance to present a claim. *See González-González v. United States,* 257 F.3d 31, 36 (1st Cir. 2001). Plaintiff voluntarily surrendered in his criminal case on October 1, 2007, was arraigned (doc. 20), and was released on PR bond the same day (doc. 21). Thus, the notices regarding the Lexus cars that the FBI sent by certified mail to Plaintiff at his home address on October 3, 2007, were reasonably calculated to reach him (docs. 48-1 at 24, 40). According to the certified mail return receipts signed "Darren Reagan" on October 5, 2007, the notices reached Plaintiff (docs. 48-1 at 30, 51). Additionally, the FBI sent two other

notices regarding each of the Lexus cars to Plaintiff by certified mail in care of counsel Mark Elliston

(doc. 48-1 at 22, 46) and counsel Ronald Wells (doc. 48-1 at 26, 42).

The record reveals that the Lexus cars were released to Tolleson, the registered lienholder, pursuant to the FBI's quick release policy. *See* 28 C.F.R. § 8.6. The FBI is, in accordance with the statutes identified in 28 C.F.R. § 8.1, authorized and designated as the investigative bureau to perform various duties with respect to forfeiture which are comparable to the duties performed by collectors of customs or other persons with respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws. The Director of the FBI or his designee is designated as the officer authorized to take final action under these statutes on claims for award of compensation to informers, offers in compromise, and matters relating to bonds or other security. The Code of Federal Regulations 28, section 8.6 states that:

> Where the forfeiture proceedings are administrative, the Special Agent in Charge, prior to the forfeiture, is authorized to release property seized for forfeiture. The property can be quick released when the Special Agent in Charge deems that there is an innocent owner having an immediate right to possession of the property or when the release would be in the best interest of justice and the Government.

28 C.F.R. § 8.6 (1999). The policy is designed to limit the quickly diminishing value of an asset to protect innocent owners, as well as to limit storage and maintenance fees. Pursuant to the quick release policy, the seizing agency can release the asset to a person or entity with a legitimate ownership interest in the property, prior to initiating administrative forfeiture proceedings. *See Little v. United States of America,* 134 F. Supp. 2d 855 (E.D. Mich. 2001) (court dismissed challenge to the DEA's authority to quick release a vehicle); *Custodio Colon v. Ayala,* 2005 WL 1971114 (D. Puerto Rico 2005) (seized vehicle released to lienholder as an innocent owner pursuant to authority of federal regulations); *United States v. Williams,* 2006 WL 1582152, *3 (M.D. Fla. 2006) (if the

Government quick releases seized property to an innocent lienholder pursuant to federal regulations, a third party who challenges the seizure and release of the property must make his complaint to the lienholder, not the court or the Government).

Plaintiff claims he was entitled to the return of the vehicles seized by the Government because he was the true owner of the Lexus cars due to payments he had made on them. No one disputes the fact that Plaintiff had possession of the 2006 Lexus at the time of the seizure, although Tolleson had repossessed it, had legal title to it, but had agreed with Plaintiff to leave it in his possession. Similarly, Plaintiff does not dispute that his estranged wife had legal title to the 2002 Lexus and that Tolleson had a lien on it for the unpaid balance of the note. Additionally, the FBI acknowledged that Plaintiff was claiming an interest in the Lexus cars because it sent him notice of the forfeiture proceedings and told him the procedure for filing a claim.

Nevertheless, as a matter of administrative procedure, De La Garza, prior to the forfeiture, was authorized to release property seized for forfeiture. De La Garza determined that the Lexus cars could be quick released to Tolleson, because Tolleson had an immediate right to possession of the property and because it was in the best interest of justice and the government to quick release them. Plaintiff's dispute, if any, should have been with Tolleson, not the government. *See Williams*, 2006 WL 1582152, *3. And as a matter of fact, after the quick release to Tolleson, Tolleson gave Plaintiff the opportunity to catch up on the past-due payments, but Plaintiff failed to do so. Under the undisputed facts in this matter, the United States and its agents legally seized and retained the Lexus cars until they legally invoked the administrative procedure of quick release and returned them to the innocent lienholder, Tolleson. As a matter of law, Plaintiff failed to show that his constitutional

15

rights were violated.  Plaintiff was not unconstitutionally deprived of the ownership or use of any property by the agents and was afforded due process.

### Recommendation

The Court recommends that the District Court grant the Defendants' Motion (doc.  55) and grant Defendants judgment as a matter of law.

SO RECOMMENDED, August 22, 2012.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

16

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).